ROGERS *et al. v.* BURR, administratrix.

1. Where a number of persons, for the purpose of inducing others to subscribe for capital stock in a manufacturing company in which all such persons were interested, executed a joint instrument guaranteeing for three years the payment of an annual dividend of eight per cent. on such stock to subscribers who would take an amount of stock necessary for successful organization, and stipulating that "if at the expiration of said three years the holder or holders of said stock desire and wish not to carry the same any longer, we hereby agree with thirty days notice from any or all of them, to pay each holder par value or fifty dollars ($50) for each share of stock held by them, their heirs and assigns; and if said amount of par value is not paid promptly, we hereby consent that the agreement and guarantee to pay 8 per cent. dividend above set forth, shall continue in force until the same is fully paid up": *Held,* That if the makers of such a contract were residents of the town in which the manufacturing establishment was to be located, interested in its growth and development, and jointly interested as subscribers in the furtherance of such a common undertaking, this was in law consideration sufficient to support the agreement.

2. A valid subscription to the capital stock of a manufacturing company (unless otherwise provided in its charter) is not required to be in writing. A contract to purchase such shares does not come within the statute of frauds, the subject of the purchase being neither the "goods," "wares," nor "merchandise" contemplated by the statute.

3. Under the terms of such a contract, the liability of the promisors to purchase and pay a given amount for the shares was conditional, and did not exist in favor of a particular promisee, unless, within a reasonable time after the expiration of the three years, thirty days notice was given by him to the promisors of his election not to longer carry the stock.

4. Notice to one or more joint promisors of an election by a promisee to sell his stock was not, in such a case, notice to the other joint promisors, and this is true though one of them as agent for the others had procured stock subscriptions under the contract.

(a) Accordingly, a verdict for the value of the shares of stock having been returned in the present case against all of the promisors, and the evidence failing to show that all of them had the notice required to fix liability, such a verdict was unsupported by the evidence and must be set aside.

(b) The guarantee as to the dividends was by the contract uncondi-- tional and binding without notice, and this guarantee covered a period of three years even though the agreement as to purchasing the stock became inoperative for want of notice.

Argued June 21, — Decided July 28, 1898.

Action on contract. Before Judge Beck. Pike superior court. October 16, 1897.

Mrs. M. E. Burr, administratrix of H. R. Chambers, brought suit on the following contract:

"Georgia, Pike county. We, the undersigned parties, recognizing the importance to our town and community of a speedy and successful completion of the subscription to the capital stock of the Barnesville Manufacturing Company, and it being known to us that there is a balance of about five thousand ($5,000) dollars of said capital stock untaken and unsubscribed for, and having confidence in the success of the enterprise, it is therefore agreed by us, that for the purpose of inducing any one or more persons to subscribe for said untaken balance or any part thereof, we will guarantee to them the payment of an annual dividend on the amount of their stock equal to 8 per cent. per annum on the money paid into said company on said stock. This agreement and guarantee for the payment of 8 per cent. as aforesaid is to run for the space of three years from the first day of December, 1889, and if at the expiration of said three years the holder or holders of said stock desire and wish not to carry the same any longer, we hereby agree, with thirty days notice from any or all of them, to pay each holder par value or fifty dollars ($50) for each share of stock held by them, their heirs and assigns. And if said amount of par value is not paid promptly, we hereby consent that the agreement and guarantee to pay 8 per cent. dividend, above set forth, shall continue in force until the same is fully paid up. This was signed by the defendants, eighteen in number; following whose signatures appears this: "We, the subscribers, consent and agree to take

amount of stock in the Barnesville Manufacturing Company opposite our names below, respectively, upon the terms and conditions set forth in the above agreement." Then follows this indorsement:

| Name of Subscriber. | No. of Shares. | Amount. |
| --- | --- | --- |
| Mrs. Cornelia L. Rogers ................... | 10 | $   500.00 |
| J. L. Fogg .............................. | 20 | 1,000.00 |
| Mrs. Sallie A. Cook ...................... | 10 | 500.00 |
| R. J. Powell, adm'r H. R. Chambers ......... | 60 | 3,000.00 |

The declaration alleges, that H. R. Chambers, relying on the promises contained in said agreement, agreed to take and pay for $3,000 worth, 60 shares, of said untaken capital stock which was the subject-matter of the agreement; that he entered into said agreement to take and subscribe for said stock and obligated himself to pay therefor, at the request of the subscribers to said written guaranty and at their earnest solicitation, and said guarantors knew of said agreement on his part and knew that said stock was so taken on the faith of said written guaranty; that before he had paid for said stock and had the same issued, he died, and R. J. Powell was appointed administrator on his estate, who, knowing that his intestate had contracted to subscribe and pay for said $3,000 of capital stock under said guaranty, carried out in good faith the contract of said intestate, and relying upon the agreement and guaranty he subscribed his name to the subscription-list attached to the written guaranty, and as such administrator paid for said stock the sum of $3,000 of the money of the estate of Chambers, which subscription and payment were well known to said guarantors, one of whom was at that time secretary and treasurer of the Barnesville Manufacturing Company, and received said payments and gave his receipt therefor; that neither Powell nor plaintiff, who succeeded him in the administration, has received any dividend on said stock since it was taken; that Powell died before the expiration of the three years named in the agreement sued on, and petitioner, as soon as she knew or ascertained the terms of said contract and as soon as she had the opportunity, made the demand on all of the defendants that they comply with their guaranty and pay to her the par value of the stock, to wit $3,000, and that

they pay her eight per cent. interest per annum on $3,000 from December 1, 1889, offering to deliver and transfer to them said stock whenever they would comply with said demand, and she still tenders to them said stock and holds it subject to their order whenever they comply with said contract. By amendment she alleges, that H. R. Chambers first subscribed for $2,-000 of stock, and afterwards agreed to take and did take and agree to pay for $3,000 additional stock upon the guaranty sued on; that before his death and before taking the $3,000 of stock, he paid $400 on the $2,000 or forty shares, and after his death Powell as administrator paid to the company $4,600, the balance due on both subscriptions, and the company issued to said administrator the $5,000 stock in one certificate on January 17, 1890, which certificate included the $3,000 of stock taken under the contract of guaranty; and that plaintiff has surrendered said $5,000 certificate to the company and had it to issue in lieu thereof two other certificates to her as administratrix, one of $2,000 and one of $3,000, for the purpose of delivering to the defendants in pursuance of the contract sued on; and she asks the court to decree that the $3,000 of stock be delivered and surrendered to defendants in pursuance of the contract sued on.

Defendants answered, denying all the material allegations; and setting up that the contract sued on was a naked promise and void. Under the evidence and charge of the court the jury found for the plaintiff, and defendants' motion for a new trial was overruled; to which ruling they excepted. The motion sets forth, in addition to the allegations that the verdict is contrary to law and evidence, that the court erred:

In refusing to charge the jury as requested: (a) "If you find from the evidence that R. J. Powell, as administrator of H. R. Chambers deceased, subscribed for the stock involved in this case after he had notice that all the stock was subscribed for which was requisite to make up the balance of the capital stock untaken at the time the written guaranty was made, then the plaintiff would not be entitled to recover anything in this suit." Movants contended, that it appears from the evidence that at the time defendants signed the paper sued on, the capital stock of the company was seventy-five thousand dollars, and that the

paper sued on referred to and guaranteed an untaken balance of this issue of stock; that at a subsequent date, and before Powell, administrator, subscribed for stock under said guarantee, the capital stock of the company was raised and increased to one hundred thousand dollars; and that before and at the time Powell, administrator, signed an acceptance of stock under said guarantee, all of said issue of seventy-five thousand dollars had been subscribed for and taken by others. (*b*) "If you find from the evidence that the balance of the capital stock of the Barnesville Manufacturing Company, which was untaken and unsubscribed for at the time the written guarantee was made, [was subscribed for] before H. R. Chambers or his administrator made a binding subscription upon the terms and conditions of the contract sued upon; and if you further find that Chambers or his administrator had notice or knowledge that such balance untaken on the 27th of April, 1889, had been subscribed for at time or before making the subscription under this. contract, then plaintiff would not be entitled to recover in this case." (*c*) "If Chambers while in life, on being informed of the terms and conditions of the guaranty, agreed and promised to take and pay for three thousand dollars of the stock under the guaranty, and R. J. Powell as administrator of Chambers did take and subscribe for $3,000 of the stock under this guaranty within a reasonable time, then such subscription would not bind defendants under this guaranty, unless there remained untaken and unsubscribed for stock which was needed to make up the requisite balance untaken at the time when the guaranty was made. If the full amount of the stock which was provided for at the time of making the guaranty had been taken before Powell subscribed for this stock, then defendants would not be liable."

At defendant's request the court charged: "If you find from the evidence that the defendants were not notified of the fact that stock had been taken for the estate of Chambers under the contract and accepted on the guaranty within a reasonable time after said stock had been subscribed for, then the plaintiff would not be entitled to recover either principal or interest sued for. The defendants stipulated and bound themselves, by the

terms of the contract sued upon, to pay dividends and redeem stock at par value for such stock only as was then unsubscribed for; that is, stock as was·necessary to make up a balance of about $5,000 of the capital stock then still untaken and unsub-scribed for. Therefore, before the plaintiff would be entitled to recover in this case either the interest or principal, it must ap-pear from the evidence that H. R. Chambers or his representa-tive made a subscription for stock to make up the capital stock untaken and unsubscribed for at the time of the making the written guaranty by defendants." But the court then added the following, not embraced in the request: "Or that H. R. Chambers had agreed to take $3,000 of such untaken stock, and that Powell, administrator, in pursuance of such agreement, subscribed in a reasonable time, and that the defendants had no-tice of such subscribing within a reasonable time." Movants in-sist, that Chambers's verbal promise in his lifetime, if he made any, that he would take $3,000 stock covered by such guaranty, he having died without making such subscription or paying any money for such stock, was not binding on him or his estate; and that plaintiff can not tack Powell's subscription as administrator to Chambers's verbal promise, for the purpose of showing an ac-ceptance of the guaranty in a reasonable time, nor for any other purpose to bind defendants.

After charging, at defendants' request, that "A declaration or a promise by H. R. Chambers, that he would take stock un-der this contract sued upon, without more, would not be binding on Chambers or his administrator, and would not be a subscrip-tion or acceptance of the guaranty under the terms and condi-tions thereof," the court erred in adding: "But if H. R. Chambers promised or agreed to take stock under this guaranty, and if in pursuance of such agreement Powell as administrator actually subscribed within a reasonable time for· $3,000 of this stock upon the faith of this guaranty, and if defendants had no-tice of such acceptance, defendants would be liable, provided notice of plaintiff's desire no longer to carry said stock was given in a reasonable time after the expiration of three years from December 1st, 1889, to the guarantors."

The court charged: "If the evidence shows that J. J.

Rogers, one of the defendants, drew the paper sued on, i. e. this guaranty, and submitted the same to the other defendants and they acted with a common intent and purpose to procure $5,000 additional subscription to the capital stock of the Barnesville Manufacturing Co., to supply a deficiency of about $5,000 of untaken balance; and if the evidence shows that Rogers and the other defendants executed the paper sued on, and if the said paper was intrusted by the other defendants to Rogers to procure the subscription of $5,000 in pursuance of said common intent and purpose (if such is shown by the evidence), and Rogers did procure Chambers's agreement to subscribe or to take a part of said unsubscribed balance upon the faith of the guaranty, and Chambers died before the money was paid to the Barnesville Manufacturing Company; and if Powell, administrator of Chambers's estate, within a reasonable time, in pursuance of said agreement and on the faith of this guaranty, paid the subscription to said Barnesville Manufacturing Co., and if Rogers afterwards received and accepted payment from Powell of said subscription, then this guaranty became an executed, completed, absolute contract; and if you believe that Rogers was acting for himself and the other defendants by and with authority express and implied from them to act for them in procuring the subscription from Powell, administrator, and if the evidence shows that he so procured it, the payment by Powell as administrator to Rogers, if made in a reasonable time and on faith of this guaranty, would have made, as I have said, this guaranty and acceptance a completed, executed contract; and notice of this to J. J. Rogers, if he had acted for himself and other defendants (with authority from them, express or implied) was notice to all of the defendants. But before you can find that defendants had notice on the idea that Rogers was defendants' agent, both the fact of agency and of notice to Rogers must be made to appear by a preponderance of the evidence." Movants contend: (1) That this created upon the jury the impression that Rogers had approached Powell after Chambers's death, and procured from Powell as administrator an agreement to take the stock on the faith of this guaranty. (2) That there was nothing in the evidence tending to show that Rogers ever procured the sub-

scription from Powell. (3) That the charge withholds from the jury the defendants' theory that Powell was bound to inquire whether the $5,000 had been taken at the time he subscribed for the stock.

The court charged: " If you believe from the evidence that Chambers verbally agreed, upon being informed of the terms of the guaranty (if he was ever so advised or informed), that he would take $3,000 of the company's stock upon the terms of this guaranty; and if you believe further from the evidence that, in pursuance of that agreement by Chambers, Powell, Chambers's administrator, subscribed this acceptance within a reasonable time thereafter, and that defendants had notice within a reasonable time of such subscription, you should find for the plaintiff." Movants contend: (1) That this relieved the administrator of the burden of inquiring whether the stock covered by the guaranty had already been taken by others, or whether the stock subscribed by the administrator was part of the $5,000 covered by the guaranty. (2) That a verbal agreement to subscribe for stock is not binding on Chambers or the guarantors or the company. (3) That Chambers's verbal agreement to take stock can not be made binding by his administrator on his estate, the company, or the guarantors.

*J. S. Boynton, R. L. Berner* and *Estes & Jones,* for plaintiffs in error.

*J. F. Redding* and *S. N. Woodward,* contra.

LITTLE, J. There are two main facts on which the parties are at issue, and the right of the plaintiff to recover depends upon the determination of both in her favor, to wit: (1) Did the plaintiff's intestate contract for sixty shares of the capital stock of the Barnesville Manufacturing Company on the faith of a written agreement signed by the defendants, conditioned that the defendants guaranteed to her intestate the payment of an annual dividend amounting to eight per cent. on the shares subscribed, and also by which they undertook, after the expiration of three years from the date of the agreement and on thirty days notice, to pay him the par value of the stock for which he had subscribed; and (2) if the plaintiff's intestate did so sub-

scribe, did he or his personal representative so comply with the
terms of such agreement as to notice, as would entitle the plain-
tiff to recover? This case has heretofore been before this court,
and is reported in 97 *Ga.* 10. Construing the contract, this
court there held, that if the intestate did so subscribe, he or his
personal representative had the right, at the expiration of three
years from the time stated, to elect whether he would keep the
stock, or turn it over to the defendants and require them to pay
him par value for such stock. The court further held that
such election could not be made until after November 30, 1892,
and it was further held that the petition now under considera-
tion set out a good cause of action against the defendants. To
determine whether the verdict which is sought to be set aside is
unsupported by evidence in the record, it is necessary to ascer-
tain the obligations imposed by the contract on each of the par-
ties thereto, as well as to review such portions of the evidence as
bear on the questions presented. The contract upon which the
suit was brought was an original undertaking by the makers
with such persons as would subscribe for any portion of the bal-
ance of the capital stock of the Barnesville Manufacturing Com-
pany which remained untaken at the time of the execution of
the instrument, that such makers would guarantee to such sub-
scribers the payment of an annual dividend on the amount of
stock so taken, equal to eight per cent. per annum on the money
paid into said company on said stock. So that the obligation of
the makers of the contract was to pay to these subscribers an-
nually such a sum as, when added to any dividends which
might be declared by the manufacturing company, would equal
the amount of eight per cent. per annum on the amount which
such subscribers had actually paid into the company on the stock
for which they subscribed, and this guarantee was to be in force
for the term of three years from December 1, 1889. The ma-
kers further contracted with the subscribers, that at the expira-
tion of said three years, if the holder or holders of the stock so
subscribed should so desire, and did not wish to carry the stock
any longer, they would, with thirty days notice given by any or
all of such subscribers, pay to each holder of the stock fifty dol-
lars (being the par value) for every share of stock so subscribed.

So that the stipulations of the agreement bound the makers to pay the subscribers, as dividends on their stock for three years, eight per cent. per annum on the money such subscribers had paid for the stock, less such a sum as might be paid by the company as dividends thereon. Also, if, after three years from December 1, 1889, any or all of such subscribers did not desire to hold the stock subscribed for, the makers, after thirty days notice from such of them as did not desire to carry the stock, would pay to such subscribers fifty dollars for each share of such stock, upon a transfer of the same. The theory of the plaintiff's case, as set out in her petition, is that her intestate, H. R. Chambers, in his lifetime, under the terms and conditions of the agreement aforesaid, subscribed to sixty shares of such capital stock, of the aggregate par value of three thousand dollars. The evidence does not show the date at which the alleged subscription was made, nor whether the same was in writing. But the petition alleges that before her intestate had paid for the stock he died, and that R. J. Powell, his administrator, knowing that the intestate had contracted and subscribed for the stock, carried out such contract and paid the subscription therefor and received a certificate. It was of course a question of fact to be determined by the jury whether such contract had been entered into by the plaintiff's intestate with the manufacturing company.

1. It was insisted by counsel for plaintiff in error, that even if Chambers had contracted for the sixty shares of stock, the plaintiffs in error were not bound, because there was no consideration moving them in the execution of the instrument sued on, and also that the contract of subscription was not in writing, and did not, therefore, become a binding contract of subscription. A reference to the instrument shows, that the makers of it were residents of the town in which it was proposed to erect and put in operation a manufacturing plant in which the promisors and promisees were jointly interested, and the subscription to the stock invited to be made was in furtherance of the undertaking. See 6 Am. & Eng. Enc. L. 704; 28 Ill. 188. In the opinion of the makers, the establishment of such a plant would add to the prosperity of the town, and thus directly to their own. Undoubtedly, such a consideration is sufficient to sup-

port the undertaking entered into; for a consideration is valid if any benefit accrues to him who makes the promise. Civil Code, § 3657.

2. We also think it is not necessary to the validity of a contract of subscription to the shares of stock in a manufacturing company that such contract should be reduced to writing. Shares of joint-stock companies are neither goods, wares, nor merchandise, within the meaning of the statute of frauds. 1 Thomp. Corp. § 1068, and authorities cited in notes 11 and 12 on page 858, and note 1 on page 859. In the same volume, § 1147, this author says: "It is neither necessary that there should be a contract in writing to take and pay for shares, nor an actual receipt of them, or, what is tantamount, a receipt of their symbol, a stock certificate, in order to constitute one a shareholder. It has accordingly been held that one may become a shareholder without signing the stock-book or any agreement to take shares, and that a parol agreement made with the directors of the corporation to take stock can be enforced, when neither the governing statute, nor the charter, requires such contract to be in writing"; and in notes 2 and 3 cases are cited to support the doctrine laid down. The contract of subscription for shares of stock in an incorporated company may be entered into in various ways. Whenever an intention to become a subscriber is manifest, the courts incline, without particular reference to formality, to hold that the contract of subscription subsists. It is, as in case of other contracts, very much a question of intention. Formal rules are for the most part disregarded, and, in general, a contract of subscription may be made in any way in which other contracts may be made. Any agreement by which a person shows an intention to become a stockholder, is sufficient to bind both him and the corporation. 1 Cook on Stock and Stockholders, § 52, note 1.

3. In the present case the plaintiff testified that her intestate entered into a contract with the corporation for sixty shares of its capital stock, in addition to the forty shares theretofore subscribed; and a receipt was introduced in evidence showing the payment by the administrator to the company of the amount due for such stock at its par value. The plaintiff further testified

that such subscription was made to that part of the càpital stock which the defendants in error referred to in their written agreement, and that such stock was taken under the terms and on the faith thereof; and we must rule as a matter of law that the consideration shown was sufficient to support the contract, and the evidence that the stock was subscribed under the terms of the instrument sued on was sufficient to authorize the finding by the jury that a valid contract for stock had been made by the intestate under the defendants' agreement. The jury having determined that a subscription to sixty shares of stock had been made by the intestate under the terms of the agreement executed by the defendants, the question then arises, under the evidence, whether the plaintiff had so complied with the other terms of the agreement as to entitle her to recover. As we have seen, the obligation that the plaintiff should receive eight per cent. per annum for three years on the money which her intestate, or any other representative of his estate, had paid into the company under the subscription, was absolute, depending on no condition. But the agreement that the makers of the instrument would pay, at the expiration of three years, to the holders of stock subscribed under such agreement, the par value thereof, was conditional. The holders of such stock were under no obligation, at the end of three years, to sell their stock to the defendants for fifty dollars per share, but it was optional with them whether they would do so or not. If any holder so desired and would indicate such desire by notice as stipulated, then the makers agreed to make the purchase. It was therefore necessary in any event, at the expiration of such term, if any holder desired to sell his stock, that notice be given to the makers of the instrument that he elected to exercise his right of option and call on them to purchase the stock. The pregnant clause in the agreement was: " And if, at the expiration of said three years, the holder or holders of said stock desire and wish not to carry the same any longer, we hereby agree, with thirty days notice from any or all of them, to pay each holder par value or fifty dollars for each share of stock held by them." This contract therefore, so far as it imposed liability on the defendants to purchase the stock, was, as has been said, conditional; and if a holder de-

sired, under its terms, to sell his stock, he was bound to give to the makers of the instrument, within a reasonable time after November 30, 1892 (*Rogers* v. *Burr,* 97 *Ga.* 10), thirty days notice of the exercise of his option and of his wish to sell them his stock; and until such notice was given, there was no obligation on the part of the makers to purchase the stock of any holder; and if no such obligation existed until notice was given and no liability to purchase in the absence of such notice, then no right of action accrued to the plaintiff against the defendants to recover the purchase-money of the stock until such a notice had been given. The notice required by the contract was a condition precedent to the liability of the defendants to purchase the stock. If, by the express terms of a contract, notice be a condition precedent to performance, or be implied from the nature of the contract, such notice must be averred and proved. 2 Story on Contracts (5th ed.), §1332, and authorities cited in note 1 on page 504. Clark, in his work on Contracts, page 667, says: "A promise may be conditional in the sense that its operation awaits the performance of some act to be done by the promisee. If no time is specified in which the act is to be done, the non-fulfilment of the condition merely suspends and does not discharge the rights of the promisee. Common illustrations of such conditions are furnished by cases of promises conditional upon demand or notice. If a person promises another to do something upon demand, he can not be sued until demand has been made; or if he promises to do something upon the happening of an event, and stipulates that notice shall be given him of the event having happened, he can not be sued until such notice has been given." Apply this rule to the contract under consideration. It will be found that no time was specified in which the makers of the instrument obligated themselves to purchase this stock, except that it was not to be done until after three years from a given date. The instrument contained a promise that if it should so happen that the holder desired, after a given time, to sell his stock for a given price, then the defendants agreed to purchase it at that price, upon thirty days notice of such desire being given to them. It must therefore be held that, until such notice was given, the defendants were under no

obligation to purchase the stock held by the plaintiff, although it had been taken under the terms of the agreement. Whether or not the notice was given is a question of fact. The plaintiff avers that it was so given. The defendants in their answer deny it. The plaintiff, in her testimony on the subject of notice, says: "I never made any demand of the defendants for the eight per cent. interest; nor did I make demand of them to take the stock off of my hands. The only demands that ever were made were made by Mr. Burr, my husband, and they refused. Mr. Burr for me demanded that the parties should take the stock. This was done by a demand on Mr. Rogers. I never did make any demand personally. I never did give any personal notice that I wanted them to take the stock and to pay the interest." Burr in his testimony says: "I served each of the defendants on June 5th, 1893, with a copy of the notice (written demand). I mailed a copy to each one." So far as the record discloses, this written demand constituted the only notice which was ever given. Some of the defendants admitted having received this notice at a given date. Others of them denied that they had ever received any notice prior to the bringing of the suit. It is fair to treat Mr. Burr, in giving the notice, as the agent of his wife and as acting for her. Of course such of the defendants as received this written demand before the institution of the suit must be affected with the notice referred to in the agreement as of the date of the receipt thereof, if the same was given within a reasonable time after the expiration of the time when the plaintiff had a right to exercise the option; but can those defendants who deny that they received the written demand be affected with the notice required by the terms of the agreement? It will be noted that while Mr. Burr says he served each of the defendants with a copy of the notice on June 5th, 1893, he explains this by saying that he mailed a copy to each one. The notice required by the terms of the contract as fixing a right in the plaintiff to demand of the defendants the purchase of her stock, could only be met by showing actual personal notice to the defendants. The notice required is equivalent to demand. If it was a condition precedent to the institution of her suit that thirty days notice should be given that she

desired to sell her stock, in order to render the defendants le-
gally liable to purchase it, then such notice must be a demand
that the defendants purchase the stock; because it is only on the
failure or refusal to so purchase that the right of action accrues.
The notice required being actual, it is apparent that the require-
ment is not met by simply mailing to the address of each of the
·defendants a statement that she exercised her right of option
and demanded that they purchase the stock, where the defend-
ants or any of them deny that they received such notice, unless
it be further shown that such written notice was in fact received
by them.    The evidence is uncontradicted, therefore, that some
of the defendants received no notice prior to the bringing of the
suit.    In our opinion, before the plaintiff could maintain the
action and recover against the defendants, on this branch of the ·
·case, it was necessary that the requisite notice should have been
given to each of the makers.    The contract was a joint obliga-
tion; and as to any particular undertaking therein set forth,
all must be shown to be liable, or none are.

4. In the next place, we do not think that the contention of
the defendant in error, that notice to one or more of the defend-
ants was, in law, notice to each and every one of them, because
of the fact that they are joint contractors, is sound.    We are
aware that in the case of *Cox* v. *Bailey, 9 Ga.* 467, it was held
that a payment made by one of two or more joint contractors,
within the statute, and before its bar had attached, constituted
a new starting-point for the statute, and bound all of such joint
contractors; and the ruling there made was adhered to in the
case of *Tillinghast* v. *Nourse, Stone & Co., 14 Ga.* 641.    The
principle upon which those cases were decided was, that the
same rule applied to joint contractors or joint promisors as did
to partners (for which as it now exists see section 3791 of the
Civil Code).    Such joint contractors or joint promisors were
regarded as partners with reference to the particular joint obli-
gation.    In the latter of the cases cited above, however, Lump-
kin, J., delivering the opinion of the court, after stating that,
owing to disqualification, he did not preside in the former case,
says:    " We know that the correctness of the principle, that the
admission of one joint contractor or partner binds the other, has

been frequently doubted and sometimes denied.    The doctrine was first laid down by Lord Mansfield in Whitcomb *v.* Whiting (Douglas, 652), and it is founded upon the idea that the bar created by the statute, rests entirely upon the presumption that the debt has been paid, and that such an acknowledgment or payment removes the presumption and revives the original promise.    And the conclusion is that in this, as in other cases, an acknowledgment by one of many who are jointly concerned is evidence against all, sufficient to remove the presumption of payment."    He further says:    " But I must say that this principle has not only been questioned in England (1 B. & Alds. 467), but from the examination by the Supreme Court of the United States, in Bell *v.* Morrison (1 Peters, S. C. R. 363), the foundation on which it rests found to be altogether unsatisfactory.    In Pennsylvania and some of the other States it has been utterly exploded"; citing Levy *v.* Cadet, 17 Serg. & Rawle, 126; 4 Greenleaf, 140; also cases collected in 2 Pick. Rep. (2d ed.) 583, note 1.    In the case of *Hunter* v. *Robertson,* 30 *Ga.* 479, the court, in declining to extend the principle announced in the 9 *Ga.* and 14 *Ga.* supra, so as to prevent the statute of limitations from attaching as against the indorser or surety by reason of a payment on a note made by the principal or maker, said that the correctness of the principle, even as to joint contractors and partners, was gravely doubted by this court, but as the question was no longer open, but an adjudicated one, the principle was adhered to, although a contrary holding would have been the better policy.    The court further said, Lyon, J., delivering the opinion, " If the principle is wrong when applied to joint makers—and there is no doubt in my mind but that it is—shall we extend it to an endorser on the same fallacious reason ?" We think the true law is enunciated in the case of Coleman *v.* Fobes, 22 Pa. St. 156, s. c. 60 Am. Dec. 75, where it was held that partial payment by one of several joint debtors, not partners at the time, was not such an act as justifies an inference of a new promise by the others, so as to remove the bar of the statute of limitations; and that joint debtors, as such, are not agents of each other.    In that case, Lowrie, J., delivering the opinion of the court, after commenting upon the case of

Whitcomb *v.* Whiting, supra, and charging to it, for the most part, the confusion which exists in the decisions, both in England and in this country, on this subject, says: "It is not true that joint debtors, as such merely, are the agents of each other. Partners are so while the relation continues, and this is part of the law and essence of that relation, but not of that of joint debtors. The distinction is palpable, when it is noticed that a joint contract by persons not partners can have no inception, and can not be changed in time, amount, subject, form or substance, without the several act of each of the joint contractors. Their interests are joined only in so far as the contract joins them. Their contract or understanding by which they agree together to enter into the joint liability to the creditor is one thing, and the joint contract with the creditor another thing. Their relations to each other are defined by the former, and their joint relations to their creditor by the latter; and their joint relations in one aspect in no sense define those in the other. Whether, as among themselves, one is to pay all or half or none, depends, not upon the contract with the creditor, but on their own arrangement. One alone may be the real debtor, and may be so abundantly able to pay that the others may be said to have no real interest in the matter. And even if they are, as among themselves, equal debtors, there is no real community of interest; for by enforcing contribution, each is made to answer for his true share."

It can not be seriously contended that under the evidence, service of a notice to purchase the stock on Rogers was notice to the other promisors. It appears from the evidence that Mr. Rogers procured the makers to execute the agreement which after execution was left with him to procure, under its terms, the desired amount of subscription. His agency could, under this, extend no further than to procure subscribers; when this was done his agency ceased.

What has been said in reference to notice or demand does not apply to the question of recovering the dividends contracted to be paid. That right, so far as it is stipulated in the contract, is absolute (*Rogers* v. *Burr*, 97 *Ga.* 14); and if any legal reason exists why the plaintiff is not entitled to recover the amount of the dividends contracted to be paid during the period

of three years; such reason must be founded on causes other than the want of notice.

In the view we take of the law applicable to the case, we are constrained to rule that as some of the defendants in this case were without notice, prior to the bringing of the suit, and therefore no right of action as to them accrued to the plaintiff upon the obligation to purchase the stock in her hands, it must follow that the verdict in her favor, requiring the defendants to pay over to her the par value of this stock, was contrary to law, and should be set aside.   As above said, the contract on which the suit was brought was joint, not several, and was an obligation of the promisors jointly to purchase the stock, and not an undertaking on the part of any one severally to do so.    The action, therefore, was not, as to this particular stipulation, maintainable, unless each and all of the promisors, who were in life and within the jurisdiction of the court, were not only made parties but shown to be liable.    *Booher* v. *Worrill*, 43 *Ga.* 587; *Graham* v. *Marks & Co.*, 95 *Ga.* 38.    We have shown there could be no recovery against all for a breach of this stipulation, and therefore, because of the joint character of the obligation, there could have been no recovery against any.

*Judgment reversed.   All the Justices concurring, except Simmons, C. J., disqualified.*