### ROGERS *et al. v.* CHAMBERS, administrator.

1. Where one is induced to subscribe to a certain amount of stock in an incorporated company upon a written guarantee, entered into by others, to the effect that such subscriber shall receive eight per cent. dividend on his stock for three years from a given date in future, and where such subscriber has paid before said date a portion of his subscription, dies before the date named in the guarantee, and an administrator is appointed on his estate shortly after that date: *Held*, that the fact that the entire subscription was not actually paid in by the date mentioned in the contract of guaranty does not relieve the guarantors from liability to the estate of the deceased subscriber, his administrator having, within a reasonable time after appointment, paid off the balance of the subscription out of the estate of his intestate.

2. There was no error in ruling out testimony tending to show that the defendants did not know anything of the administrator's subscribing for the stock agreed to be taken by his intestate, there being nothing in the contract requiring the subscribers or their representatives to give such notice to the guarantors.

3. Where, after a case was called for trial, it was admitted that one of several joint defendants in a suit had died the day before, there was no error in the court allowing counsel for plaintiff to dismiss the case as to such defendant, and the trial to proceed against the remaining defendants.

4. It was not competent for one of the defendants to testify, in the present case, to what occurred between him and the intestate, with the view of showing any facts which would tend to establish that the defendants were not liable to the estate of the deceased under their contract.

5. There was, in this case, no evidence to sustain the plea of the statute of limitations, as the suit was upon a written contract brought within six years after the right of action accrued.

6. The issues in this case were fairly submitted to the jury under the charge of the court. There was sufficient evidence to sustain the verdict, and the court did not err in refusing to grant a new trial.

Argued November 7, — Decided November 27, 1900.

Complaint.    Before Judge Reagan.    Pike superior court.    April term, 1900.

*James S. Boynton, Claude Estes,* and *Robert L. Berner,* for plaintiffs in error.    *J. F. Redding* and *W. W. Lambdin,* contra.

· LEWIS, J.    A full report of the facts in the present case will appear from the statement thereof when brought here the first time, and will be found in 105 *Ga.* 433, et seq. The contract sued upon is there fully set forth. The original suit was not only for three years dividends on the stock that had been subscribed and paid for by the deceased and his administrator, but also for the par value of the shares of stock.    In that case this court decided that a verdict for the value of the shares of stock having been returned against all the promisors, and the evidence failing to show that all of them had the notice required to fix liability, such a verdict was unsupported and must be set aside.    It was further decided, however, that the guarantee as to the dividends was by the contract unconditional and binding without notice, and this guarantee covered a period of three years, even though the agreement as to purchasing the stock became inoperative for want of notice.    After this decision the case came up for trial again in Pike superior court, and the plaintiff below abandoned the suit for the value of the shares of stock, and proceeded to trial for the purpose only of recovering the three years dividends at eight per cent. on such shares, besides interest.    The jury returned a verdict on this second trial for $720 principal, and $415.40 interest, upon which judgment was entered by the court. Whereupon the defendants below made a motion for a new trial, and in their bill of exceptions assign error on the judgment of the court overruling their motion.    From the plaintiff's evidence it appears that H. R. Chambers during his lifetime entered into a contract to take and pay for $3,000 worth of stock, sixty shares at $50 each, in the Barnesville Manufacturing Company, on the inducements offered by the defendants in their guarantee bond.    This contract was not in writing, but seems to have been made by verbal agreement.    It was decided by this court, however, when the case was here (see opinion of Justice Little, 105 *Ga.* 442), that "it is not necessary to the validity of a contract of subscription to the shares of stock in a manufacturing company that such contract should be reduced to writing."    It appears from the record that Chambers,

after this alleged contract for subscription, and some time before December 1, 1889, mentioned in the contract, paid to the company $400. He died during that year, 1889, before December 1st. By an amendment to plaintiff's petition it further appears that Chambers first.subscribed to $2,000 of the capital stock in the company, and afterwards agreed to pay for $3,000 additional upon the written guarantee of the defendants sued on in this case. R. J. Powell, who it seems from the record was president of the Manufacturing Company at the time, was, on December 20, 1889, appointed administrator on the estate of H. R. Chambers, deceased. After his appointment, he paid out of the assets of the estate of H. R. Chambers $4,600, in full of the subscription of Chambers to the capital stock of the Barnesville Manufacturing Company. This payment was made to J. J. Rogers, secretary and treasurer of the company, and included not only the $2,000 stock subscribed for by Chambers, but the $3,000 that was subscribed for on the faith of the guarantee, less the $400 that Chambers had paid in his lifetime to Rogers, secretary and treasurer. That payment was made January 1, 1890, just ten days after Powell's appointment as administrator, and the stock was issued to him as administrator accordingly, there being at the time one certificate of $5,000, which included the $3,000 subscribed on the faith of the guarantee bond. Subsequently this was exchanged for two certificates of stock, one for $2,000 and the other for $3,000; the object of the change being to have that portion of the stock which was alleged to have been subscribed for on the guarantee contract made by the defendants in a condition where the same could be tendered to the defendants in the event of settlement of their liability thereon. Powell afterwards died, and his widow, who after his death married one Burr, was appointed administratrix de bonis non on the estate of Chambers, and instituted as such administratrix this suit. Chambers died on October 5, 1889.

1. One ground of the motion for a new trial is that the court erred in refusing to give in charge to the jury the following written request of defendant's counsel: " In order for the plaintiff to recover on the contract sued on in this case, she must show to you that the stock was subscribed for and the money paid in on or before December 1, 1889." It is contended that the error consisted in this: "The contract of guaranty shows on its face that this was required, and the recovery must be had on the exact terms of the contract and

none other." We do not think the contract shows any such thing. The evidence for plaintiff tends to show the contract was made several months before Chambers' death in October, and he died nearly two months prior to the date mentioned in the guarantee. All that the contract says about this date is that "this agreement and guarantee for the payment of 8 per cent., as aforesaid, is to run for the space of three years from the first day of December, 1889." There is nothing in the language used in this contract which makes this time of the essence of the contract. In fact, even if it was intended that the stock should be paid in by that date, we do not see how it could have application to the facts in this case; for the contracting party who subscribed for the stock died some time before that date, and, after his death, of course nobody was empowered to finally execute his contract but his administrator. He could not execute it until his appointment, which occurred on December 20th after the date mentioned in the contract, and it seems he exercised reasonable diligence in making payment of the balance of the subscription due by the deceased on January 1st following. Because, therefore, of natural and unavoidable causes the balance of the subscription was not paid until a few days after the time the obligors agreed to be responsible to the subscribers for the dividends.

2. Another ground in the motion for a new trial is that the court erred in rejecting the evidence of certain of the defendants, to the effect that they knew nothing of Powell subscribing for the $3,000 of stock until served with notice in June, 1895. We see no error in this ruling. This suit was based upon a contract made by the deceased in his lifetime, and there is nothing in the contract which requires any notice to be served on the obligors as to the particular time when the subscription was paid. This was the time, it appears, when Powell formally subscribed, as administrator, to the $3,000 of stock included in the payment he was about to make to the treasurer of the company. But the contract of subscription constituted the basis of the suit. It appears that this was a verbal contract, made several months before, between Chambers and the defendants, or Rogers acting for the defendants. It seems that Powell, the administrator, who was the president of the company, knew of this contract, and that Chambers had died before the time of its full execution, and he simply carried out, within a reasonable time after his appointment as administrator,

the contract by paying the balance due thereunder. This payment was made to Rogers, one of the defendants, and one of the signers of the guarantee, who seems to have taken an active part in getting up subscriptions for the balance of the stock which by their guarantee they sought to induce.

3. It appeared on the trial of the case that one of the defendants, Turner, had died on the day before the case was called for trial. This fact being made known, defendants' counsel asked the court to continue the case so that an administrator might be appointed upon the estate of the deceased, and the case proceed against all the defendants. The court refused to do this, plaintiff having dismissed the action as to the deceased defendant, and having obtained an order from the court to the effect that it should proceed as to the remaining defendants. It seems the court based this ruling upon the Civil Code, § 5041, wherein it is declared: "In all cases which have been or may be commenced in any of the courts of this State against two or more defendants, one or more of whom have died or may die pending said case, it shall and may be lawful for the plaintiff or complainants to suggest said death of record, and to proceed, in the trial of said case or cases, against the surviving defendant, to the extent of their respective liabilities." It was decided in *Crapp* v. *Dodd*, 92 *Ga.* 405, that the section of the code to which we have referred applies to a suit against a partnership composed of three members, and where one of them dies, upon his death being suggested of record, the case may proceed without further order against the other two partners as survivors. It is contended that this amounted to a release of the estate of the deceased defendant, and that each defendant had a right to make his codefendants contribute to the payment of whatever recovery might be had in the suit. We do not think this a proper construction of the order. The case was simply dismissed as to one of the defendants. We can not see that that necessarily prevents the other defendants from calling upon the representative of his estate to contribute in the event they have to pay for the entire amount due the plaintiff. We conclude that the ruling is authorized by the statute above quoted. There is some question as to whether or not this is a proper ground, in any event, in a motion for a new trial; or whether or not exceptions pendente lite should not be filed to such a ruling. We, however,

do not decide this, because we think, under the statute, the court was fully authorized in this ruling.

4. Another ground of error alleged is that the court erred in holding that J. J. Rogers, who was offered as a witness to testify to what occurred between him and Chambers and R. J. Powell touching the taking of the stock in controversy, was an incompetent witness. The evidence sought to be introduced from Rogers, who was a party defendant to the case, was evidently communications had with the deceased, Chambers, by which he expected to show that he never took any of the guaranteed stock. As the representative of his estate was a party to this case, such evidence was clearly inadmissible under the Civil Code, § 5269 (1), which declares: " Where any suit is instituted or defended by a person insane at time of trial, or by an indorsee, assignee, transferee, or by the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the insane or deceased person, as to transactions or communications with such insane or deceased person."

5. By way of amendment to their plea the defendants alleged in general terms that the suit was barred by the statute of limitations, and it seems from the argument of counsel for plaintiffs in error that he construed this action as a suit on an account, and, therefore, under the Civil Code, § 3768, it was barred in four years after the right of action accrued. This suit, however, was upon a written contract signed by the defendants, and falls, so far as the statute of limitations is concerned, under the Civil Code, § 3767, which says that such suits shall be brought within six years after the same become due and payable. The dividends embraced in the contract were for three years commencing December 1, 1889. The first eight per cent. dividend was not due until twelve months thereafter, December 1, 1890; and this suit was brought in less than six years from that time. Hence it was in time to recover the dividends for each of the three years, together with interest thereon.

6. The above covers all the material points made by plaintiffs in error. The issues were fully and fairly submitted to the jury under the charge of the court. It is true there was some conflict in the evidence as to the nature of the contract made between Chambers and Rogers, acting for himself and the other defendants. The jury evidently believed the plaintiff's theory of the case. It ap-

pears from the record that the original guarantee was offered in evidence, and upon it were entered subscriptions to stock taken thereunder. The list of subscribers was as follows: Mrs. Cornelia Rogers, 10 shares, $500; J. L. Fogg, 20 shares, $1,000; Mrs. S. L. McDowell, 10 shares, $500; R. J. Powell, administrator of H. R. Chambers, 60 shares, $3,000. It will be noted that the obligors in this guarantee contract set out to raise $5,000 additional in subscriptions to meet the wants of the company. The testimony for plaintiff was to the effect that when Rogers was working on Chambers for the subscription, he told him that he had raised $2,000, and needed only $3,000 more, for which he hoped he would subscribe. After the time of his alleged subscription to this amount under the bond, it does not appear from the record that these guarantors were any further exercised about raising more subscriptions. Now, it will be seen from the list of subscription appearing upon the original contract that there was only $2,000 raised besides the $3,000 from the estate of Chambers. We allude to this to show the strong corroboration the record makes of the testimony introduced in behalf of the plaintiff; certainly sufficient to warrant the finding of the jury.

*Judgment affirmed. All the Justices concurring, except Simmons, C. J., who was disqualified.*