## 42007.  LAWSON v. DIXIE FEED & SEED COMPANY, INC.

ARGUED MAY 5, 1966—DECIDED JUNE 16, 1966—
REHEARING DENIED JULY 21, 1966—

*O. J. Tolnas,* for appellant.
*Harold A. Boggs,* for appellee.

FELTON, Chief Judge. 1. The action being brought on a joint account, against U. A. Lawson and Sidney Thurmond, the evidence must establish a joint liability on the part of both defendants to authorize a recovery.

The following evidence was adduced on behalf of the plaintiff: J. Ralph Whitehead, president of the plaintiff company, testified as follows: That he does not know and has never seen Thurmond; that his first dealings with Lawson were 2½ years ago; that they had a separate account with him and then Lawson and Thurmond were a partnership in the other purchases of fertilizer; that Lawson came into his office in June, asked about how much his account was, then asked how much was his account and Thurmond's; that when he was told, Lawson said that he would talk to Sidney and that they would either come and pay him or he would bring Thurmond down and make a note for him; that Lawson paid off his personal account but not the joint account; that Lawson had ordered fertilizer from him over the telephone and had it delivered to Thurmond's place; that Lawson had always paid his personal accounts; that the credit he was extending certainly wasn't to Thurmond, whom he didn't even know, but to Lawson; that he "didn't sell Mr. Lawson the fertilizer except what went on his bill"; that Lawson would tell him to put

it on his bill if it was for him and put it on "this" bill if it was for him and Thurmond; that Lawson and Thurmond each had an account; that Lawson ordered at least 8,000 pounds of fertilizer to go to Thurmond's place; that he couldn't say which load that was because other employees of the plaintiff also took orders; that although he is charging Lawson with the crop hail insurance, the named insured was Thurmond, who took out the insurance; that he doesn't know why Thurmond alone was the insured, although he wasn't the only owner, unless it was because Thurmond was the "manager up there" and that Mr. Escoe, plaintiff's secretary and manager, would have to answer that question; that Mr. Martin, another employee of the plaintiff, had been by Lawson's place a number of times to try to get his approval to insure his cotton; that Lawson had come to his place of business, acknowledged the correctness of the account and promised to pay it; that he had denied Thurmond's request for credit on one occasion because Lawson was unavailable to approve it; that he couldn't testify as to where the approximately five loads of fertilizer went since he wasn't there; that the plaintiff sent statements of the account through the mail addressed to Lawson over a period of about 4 months after his conversation with him in his office and that none of them was returned by the post office; that he didn't know if Thurmond was living on or working Lawson's property when the goods were delivered "up there," nor who owned the land that Thurmond worked, nor where Lawson lives; that he knew that both defendants were working a crop by his personal conversation with Lawson and his telephone conversation with Thurmond; that Lawson had a prior account with the plaintiff in 1962 which he paid off late; that they had tried to find Lawson to get his approval on a loan Thurmond wanted to make and to sign the insurance papers, but that he stayed gone practically all of the time; that Lawson had come down there alone and told them that "they" were going to farm and had priced some fertilizer; that Lawson had asked him, "Well, are *we* going to be able to get the fertilizer?"; that Thurmond had ordered fertilizer from him over the telephone, this first order from him being the only time he ever made a ticket for Thurmond; that the basis of their

extending credit to Thurmond was that Lawson was "worth the money"; that in 1962 Lawson told him, concerning his fertilizer needs for 1963, that "when *we* need it, *we* will call"; that in 1963 Lawson would not pay; that Lawson had said that he and Thurmond were not in together; that he had sold them the fertilizer by the request of Lawson and Thurmond, "who were farming together"; that Lawson had bought farm equipment and let Thurmond use it; that there was "every reason given to him that they were farming together"; that they had done that before; that neither this fact nor the account was ever denied to him by Lawson.

Lewis Escoe, the plaintiff's secretary and manager, testified that he knows Lawson; that they have a joint account set up known as the "Sidney Thurmond—U. A. Lawson account," with a ledger sheet showing various goods delivered; that he knows of about 3 or 4 letters, none of which had been returned for insufficient address, that have been written to collect on this account in 1963; that it would be hard to determine if the names on the ledger sheet were written with different ink or pressure; that the books were under his supervision and he assumed that the names were put there at the same time, although he wasn't an eyewitness to it; that he didn't know personally where the fertilizer charged to the joint account was delivered; that the account had not been denied to his office until this suit was filed; that at least 6 statements were sent to Lawson of this account over an 8-month period.

R. W. Martin, another employee of the plaintiff, testified that he was familiar with the Thurmond, Lawson fertilizer accounts; that he had been by Lawson's place looking for him on numerous occasions; that Lawson showed him a baler and a rake he had bought for Thurmond and when they went together over to Thurmond's place, the latter showed them a good crop of cotton; that he assumed they were working together from the following facts: (1) that they were "together" in machinery, (2) that they were both interested in the cotton, and (3) that neither one of them asked him why he was there or told him it wasn't any of his business, but both were willing to show him the crops. He further testified that he mailed Lawson a bill from the post

office at Hull, Ga.; that he remembered Lawson's testimony from the first hearing to the effect that he had received the bill; that Lawson never "looked him up."

Defendant Lawson testified in his own behalf as follows: that he owns several farms in Madison County; that he knows Thurmond, who lives in the vicinity of the Athens-Commerce Road in Clarke County; that Thurmond rents some land that produces hay, but does not and has never rented it or any land from him; that Thurmond never has made a crop for him and he has never had any kind of interest in any crop made by Thurmond; that Thurmond had borrowed his hay baler to save his hay crop and although he hadn't told Thurmond, he intended for Thurmond to pay him for the tractor with the hay, so that it would be his when he paid for it; that he had been paid only $50 out of the hay sales thus far; that he had let Thurmond use his syrup mill and had been given only one quart of syrup in return; that, although he had let Thurmond plant in some of his corn land, he had not rented the land to him and did not require fertilizer for any of the transactions he had described; that he had not ordered 8 tons of fertilizer from Mr. Whitehead, nor 1½ bushels of seed corn; that he hadn't seen Thurmond over there doing anything, but he heard he had raised some sorry corn; that he did not receive, didn't know he had, and had never seen a hail insurance policy; that he travels a good bit; that he did not find any statement from appellee at home; that the names on the statement appeared to have been written in different hands and at different times; that he hadn't known Thurmond prior to 2 to 3 months before the fertilizer was claimed to have been ordered; that he had not planted a crop at all during the period in question; that his renters had done all the cultivating, buying and planting; that he had not ordered any fertilizer from appellee for any crop, the only use having been for a pasture; that nothing was said about the Thurmond account in appellee's office and he didn't know they had a joint account for them until this suit was filed; that a few years ago he had opened up an invitation to a wedding a day after the couple had been married a year; that he guessed that wasn't good business practice and that he hadn't let "many" letters pass like that; that there wasn't

any relationship with Thurmond regarding farming; that he hadn't made the statement regarding him and Thurmond coming back and either paying cash or signing a note, etc.; that he had had no other dealings with Thurmond than what he had testified to; that he absolutely did not furnish fertilizer on the Thurmond farm, in which he had no interest.

The evidence showed that the defendants had farmed together in the past; that Lawson had let Thurmond raise corn on his land and had loaned or given him a syrup mill and various farming implements for little or no apparent consideration; that Lawson had used the term "we" in discussing his prospective fertilizer needs with the plaintiff and had requested the plaintiff to bill him separately for his personal purchases and those for him and Thurmond; that the crop hail insurance was put in Thurmond's name because the plaintiff had been unable to locate Lawson to get his approval; that the defendants had willingly shown the plaintiff a cotton crop in which they both seemed to be interested; that Lawson had discussed with the plaintiff his personal account and his and Thurmond's account separately, agreeing to bring Thurmond down there so they could settle their account with the plaintiff; that Lawson had never denied this account; that over a period of time a number of statements of and letters concerning the joint account were sent to Lawson, upon whose credit primarily the joint account had been opened, and that none of these was returned for any reason. The above evidence, although not uncontradicted and not demanding a finding of a stated joint account, was sufficient to authorize such finding and the verdict and judgment in favor of the plaintiff. In this regard, see *Lawson v. Dixie Feed &c. Co.*, 112 Ga. App. 562 (145 SE2d 820), and cit. The court therefore did not err in overruling the motion for judgment n.o.v. and the general grounds of the motion for a new trial.

2. Special ground 1 of the amended motion for a new trial complains of the following charge: "I charge you further, if you believe that the defendant, U. A. Lawson, came to Mr. Whitehead, the president of the plaintiff corporation, and acknowledged the correctness of the account sued on and every item thereof, and promised to pay the entire account, and you believe

that by a preponderance of the evidence, then you would be authorized to find for the plaintiff." The above charge is substantially identical to the one in the first trial of the case with the exception that the phrase, "and promised to pay the entire account," held by this court to be an essential element of a stated account, was added. This charge was authorized by the testimony of Mr. Whitehead, which was not subject to the objections of appellant. Although the court might have waited until the verdict was rendered against appellant and then rendered a single judgment against both defendants jointly, this does not alter the fact that each of the defendants individually, alleged and proved to be jointly liable, was found to be liable; therefore, the effect is the same as if there had been a single judgment against them jointly. This ground is therefore without merit.

3. Special ground 2 of the amended motion for a new trial complains of the court's failure to make four written requests to charge, to the effect that the defendants were sued jointly and that, if the jury find that appellant was individually liable for some or all of the items of the account, to that extent appellant would not be liable to the plaintiff. The failure to give these requested charges was not error, because even if the evidence authorized the finding that the whole account sued on was not joint and there was evidence that some or all of the items were purchased by appellant individually, the requested charge was incomplete and confusing in that it did not include the proposition that even if Lawson was not liable on an agreement to be jointly liable for any or all of the joint account, he could still be held liable for all items jointly if he acknowledged the joint account and agreed to pay it or give a note for it. This ground is likewise without merit.

4. Special ground 3 of the amended motion for a new trial complains of the court's admission in evidence of witness Whitehead's testimony as follows: "And of course the credit that I was extending certainly wasn't to Sidney Thurmond. . . I was extending credit to Mr. Lawson." The above testimony is not inconsistent with joint liability; it merely indicates what other evidence showed, i.e., that the account, although joint, had been opened on the strength of the financial status of appellant

Lawson, with whom the plaintiff company had done business before. This ground is without merit.

5. Special ground 4 of the amended motion for a new trial complains of the admission of testimony that appellant had been mailed letters and statements of the account, on the grounds that such documents were the highest and best evidence and their absence was not accounted for, since appellant had not been notified to produce them and they might be in defendant Thurmond's possession. Since at least some of the letters and statements were mailed to the appellant, it was not necessary to show that Thurmond did not have them. Although appellant testified that he didn't remember receiving them, there was also evidence that he was gone from home much of the time, that occasionally he didn't open letters for a long time after receiving them, and that he had not been able to find the letters and statements at home. This ground is without merit.

6. Special ground 5 of the amended motion for a new trial complains of the court's asking witness Whitehead the following question, which, it is contended, was leading: "Mr. Whitehead, did you or did you not say that the defendant, Mr. Lawson, came to your place of business and acknowledged the correctness of the account and promised to pay it? Did you testify as to that or not?" The court is permitted, within its discretion, to question witnesses when it is deemed useful. Apparently there was some question as to whether the witness had, in fact, testified to the effect indicated but that complaint is not a part of this ground of the motion. The court did not abuse its discretion in determining whether the witness had testified to this effect, which testimony was pertinent to the plaintiff's cause of action. This ground is without merit.

7. Special ground 6 of the amended motion for a new trial complains of the admission in evidence of the following testimony, in the form of a question, of witness Whitehead: "Well, if Mr. Lawson had nothing to do with it, why then would he order fertilizer to go up to Sidney Thurmond's?" Although the ground contends that the court erred in admitting the question, the ruling of the court set out in the ground shows that it is favorable to the movant-appellant in that it sustained his objection as to

any question the witness might ask and overruled it as to any facts he might state. This ground is without merit.

The court therefore did not err in its judgment overruling appellant's motion for a judgment n.o.v. and his amended motion for a new trial.

*Judgment affirmed. Nichols, P. J., Bell, P. J., Frankum, Jordan, Hall, Eberhardt and Deen, JJ., concur. Pannell, J., dissents.*

PANNELL, Judge, dissenting. I was doubtful when I agreed to the original opinion in this case and I am now convinced that I was in error in so doing. The account sued upon and alleged was a joint account against the defendants, Lawson and Thurmond. Under these circumstances, the plaintiff, in order to be entitled to recover, must prove that both the defendants owed the account sued upon, or some part thereof. *Harriman v. First Bryan Bapt. Church,* 63 Ga. 186 (36 AR 117); *Bank of Dalton v. Heartsill,* 22 Ga. App. 156 (95 SE 751); *Cox v. Henry,* 113 Ga. 259, 261 (38 SE 856); *Rogers v. Burr,* 105 Ga. 432 (31 SE 438, 70 ASR 50). This the evidence utterly fails to do. There is some evidence which might be corroborating but does not amount to proof of this fact. An officer of the plaintiff testified that Mr. Lawson admitted owing a joint account with Thurmond. While this might be an admission against his interest and might be corroborative of proof of the main fact, if proof of the main fact were in existence, this testimony of Lawson does not prove an account against Thurmond. If Lawson had testified that he and Thurmond had a joint account, this would be proof against Thurmond. The evidence, therefore, since it does not authorize a recovery against Thurmond, cannot authorize a recovery against Lawson even in the face of testimony of his admission that he owes it. The fact that Thurmond failed to appear and plead and that the case is in default as to him does not prove a joint account. It is my opinion, therefore, that the evidence demanded a verdict in favor of the defendant Lawson in the absence of such proof, and that the trial court erred in its refusal to grant the defendant Lawson's motion for judgment notwithstanding the verdict.

On motion for rehearing, I withdraw my concurrence in the judgment of affirmance previously entered.